UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA COOK,

      Plaintiff,                  Civil Action No. 18-12042

v.                            HON. MARIANNE O. BATTANI
                               U.S. District Judge
                               HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Rebecca Cook ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act.   Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Docket #10] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings.  I recommend that Defendant's Motion for Summary Judgment [Docket #15]  be DENIED.

-1-

## I.  PROCEDURAL HISTORY

On April 12, 2016, Plaintiff filed an application for SSI, alleging disability as of December 23, 2009[1] (Tr. 214).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on November 30, 2017 in Livonia, Michigan before Administrative Law Judge ("ALJ") David A. Mason (Tr. 45).  Plaintiff, represented by attorney Frank Cusmano, testified (Tr. 30-83), as did  Vocational Expert ("VE") Pauline Pegram (Tr. 83-94).  On February 7, 2018,  ALJ Mason found that Plaintiff was not disabled (Tr. 12-24).  On March 4, 2018, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on June 29, 2018.

## II. BACKGROUND FACTS

Plaintiff, born May 8, 1971, was 46 when the ALJ issued his decision (Tr. 24, 214).  She completed three years of college in 2011 and worked previously as a crew member at a restaurant, home care provider, substitute "para-pro," and as an aide in group and nursing homes (Tr. 243).   She alleges disability as a result of depression, panic attacks, an eating disorder, lupus, herniated discs, and osteoarthritis (Tr. 242).

### A.      Plaintiff's Testimony

Plaintiff offered the following testimony.

She was "technically" working, noting that she was paid by the State of Michigan to

---

[1]

Plaintiff's alleged onset of disability date ("AOD") was based on a prior application for disability which was denied on August 19, 2014 (Tr. 12, 123).  She later amended her AOD to April 13, 2016 (Tr. 50).

-2-

care for her autistic son (Tr. 50). Her former husband, with whom she shared a house, provided most of the son's care (Tr. 51). Plaintiff stood 5' 8" and weighed around 275 pounds (Tr. 51). She had not looked for other work since the Appeals Council declined to reconsider the earlier non-disability determination in December, 2015 (Tr. 51). She was right-handed (Tr. 51). In addition to the autistic son, she lived with her three other children in the basement of her former husband's home, noting that the distance between the main floor and basement was around seven steps (Tr. 52-53).

Plaintiff had a current driver's license and drove up to four times a week (Tr. 53). She did not attend social or sporting events and was not visited by non-family members at home (Tr. 53). She used a laptop computer and had a Facebook page (Tr. 53-54). She did not smoke, drink, or use illicit substances (Tr. 54). She attended AA meetings and had not used alcohol in over 15 years (Tr. 55). She had not taken a vacation since the alleged onset of disability (Tr. 55).

Plaintiff experienced the side effect of headaches from Norco and fatigue from a muscle relaxer (Tr. 55). A prescribed antidepressive caused dry mouth (Tr. 56). She was able to care for her personal needs but relied on her children to perform indoor and outdoor housekeeping chores (Tr. 56-57). Her household activities were limited to washing one plate or making a sandwich (Tr. 57). She spent most of her waking hours watching television and keeping "an eye on" her son (Tr. 57). She was unable to perform even work allowing for a sit/stand option because intense pain caused concentrational problems (Tr. 58).

Alternatively, if she took a high enough dosage of medication to quell pain, she would be "too high" to function (Tr. 58-59). She experienced only "bad" and "worse" days, noting that on a bad day, she experienced pain but was able to sit and watch television (Tr. 59). On "worse" days, she spent most of the day crying due to intense pain (Tr. 60). She experienced three to four "worse" days a week (Tr. 60). She had used a walking stick since 2011 (Tr. 61). She had been given a motorized wheelchair, but only used it at home (Tr. 62). She was unable to walk for more than a few steps at a time without the use of a walking stick (Tr. 62). She was unable to stand without leaning on something, but with the use of a walking stick could stand for up to 10 minutes (Tr. 62, 65). She was able to walk up to 150 feet with the use of a walking stick (Tr. 63). She could sit up to 20 minutes before requiring a position change (Tr. 65). She was able to make short shopping trips with the use of the walking stick (Tr. 64). She was unable to lift anything heavier than a gallon of milk (Tr. 65). Due to cervical disc problems and arthritis of the neck, Plaintiff also experienced hand numbness resulting in difficulty with fine manipulative activity (Tr. 66).

Plaintiff experienced depression due to body pain but had not received mental health treatment in four years due to her difficulty getting dressed and leaving the house (Tr. 66). She also experienced panic attacks around three times a week for 45 minutes (Tr. 67). Her anti-anxiety medication made her drowsy (Tr. 67). She was able to engage in casual social interaction but became agitated when politics were discussed (Tr. 67). She was able to follow the plot of a *Law and Order* episode (Tr. 68). She opined that due to body pain,

medication, and lupus, her ability to concentrate had worsened in the past three years (Tr. 68-69).  The condition of lupus was characterized by "profound exhaustion" (Tr. 70).  The symptoms of lupus had intensified in the past year (Tr. 72-73).  Due to lupus and cervical and lumbar spine problems, she regularly experienced level "five to six" pain (on a scale of one to ten) after taking medication (Tr. 76).  She experienced at worst level "nine" pain (Tr. 78).  The cervical spine condition resulted in pain radiating into her shoulders, arms, and hands (Tr. 76).  She experienced pain moving her head in any direction (Tr. 77).  She coped with body pain by sitting in bed with her feet on a pillow (Tr. 79).  The condition of fibromyalgia caused body soreness and sensitivity (Tr. 79).  Plaintiff used a motorized cart while shopping (Tr. 80).  She climbed the stairs of her home every three or four days to shower (Tr. 80).  She concluded her testimony by stating that her ability to watch her son (while reclining in bed) should not be used to discredit her claims of disability (Tr. 81).

## B.    Medical Evidence[2]

### 1. Treating Sources

February, 2015 records by Angelica Francu, M.D. note the conditions of osteoarthritis, fibromyalgia, anxiety, obesity and chronic neck and back pain (Tr. 410).  Dr. Francu observed normal motor strength in all extremities with "mild tenderness" of the lower back (Tr. 410-411).  She noted that Plaintiff walked with a cane (Tr. 410).

---

[2]Evidence significantly predating the AOD of April 13, 2016, while reviewed in full, is omitted from the present discussion.

In June, 2015, Plaintiff sought emergency treatment for headaches (Tr. 441). She reported the use of "medical marijuana" (Tr. 441). She did not exhibit gait problems (Tr. 443). She left against medical advice after being given headache medication (Tr. 444). July, 2015 laboratory testing was consistent with a diagnosis of lupus (Tr. 389-390). The same month, Plaintiff sought emergency treatment for a headache (Tr. 417). An MRI of the brain was normal (Tr. 419, 457). An MRI of the cervical spine showed a disc osteophyte complex at C6-C7 causing mass effect on the cord with mild right neural foramina narrowing (Tr. 419, 449). An MRI of the lumbar spine showing mild disc bulging at L5-S1 was consistent with a January, 2009 study (Tr. 419, 454). She was observed walking with a limp and using a cane (Tr. 420). October, 2015 records by Mustapha Mallak, M.D. note Plaintiff's report of level "seven" pain (Tr. 385). He noted no edema and that symptoms of lupus were lessening (Tr. 385). Dr. Mallak noted that Plaintiff took Ativan because she was "under stress" (Tr. 385). In August, November and December, 2015, Dr. Francu, M.D. administered a Toradol injection for low back pain (Tr. 398, 403, 405). Plaintiff denied painful joints or headaches (Tr. 401-402).

Dr. Francu's June, 2016 records note Plaintiff's report of anedonia (Tr. 510). Plaintiff demonstrated normal motor strength but walked with a cane (Tr. 510). Dr. Francu's January, 2017 records note that Plaintiff sought treatment for sinus tachycardia (Tr. 507). Dr. Mallah's April, 2017 records note loss of hair and continued photosensitivity as a result of lupus (Tr. 485). Dr. Francu's notes from the same month note reduced ranges of neck and

lumbar spine motion (Tr. 499).   May, 2017 MRIs of the cervical and lumbar spine were consistent with the July, 2015 studies (Tr. 463, 468, , 521, 525).   An MRI of the thoracic spine showed degenerative changes and herniations "without evidence of high-grade spinal canal narrowing" (Tr. 473).   The same month, Plaintiff was diagnosed with gastritis, duodenal ulcers, and a hiatal hernia and underwent a laparoscopic cholecystectomy (Tr. 529, 534, 558, 571, 585, 604).   In July, 2017, Plaintiff was prescribed a neck collar for chronic neck pain (Tr. 542).   In September, 2017, Plaintiff sought emergency treatment for right flank pain (Tr. 552).   Dr. Francu's records from the same month note anedonia and mild tenderness of the lower back while walking (Tr. 492).   The same month, Plaintiff received a Toradol injection (Tr. 491).

### 2.  Non-Treating Sources

In May, 2013, Terrance A. Mills, Ph.D. performed a consultative psychological examination on behalf of the SSA in connection with Plaintiff's previous application for benefits, noting her report of panic attacks triggered by unfamiliar places and being around "grossly obese people" (Tr. 380).   Plaintiff reported that she had taken care of her autistic child for the past two years (Tr. 380).   She denied current substance abuse (Tr. 380).   She reported that she was able to perform errands, care for herself, and perform household chores (Tr. 381).   Dr. Mills noted that Plaintiff was fully oriented with a normal effect (Tr. 381). He concluded that Plaintiff could "understand, retain, and follow simple instructions, and perform basic, routine, and tangible tasks]" (Tr. 382).

In June, 2016, Leonidas Rojas, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of long-term lower back pain and the inability to walk even one block (Tr. 427). Plaintiff reported bilateral surgery for Carpal Tunnel Syndrome seven years earlier (Tr. 428).

Dr. Rojas noted no distress but difficulty standing up and getting on/off the examining table (Tr. 428). He noted that she was able to perform fine and gross manipulation without problems (Tr. 429). She demonstrated mild weakness of the right upper and lower extremity (Tr. 429). Dr. Rojas noted that Plaintiff used a walking stick (Tr. 431).

The same day, psychologist Suzanne M. Kenna performed a psychological evaluation on behalf of the SSA, noting Plaintiff's report of childhood sexual abuse, depression, anxiety, and bulimia along with the physical conditions of fibromyalgia, lupus, and Obsessive Compulsive Disorder ("OCD") (Tr. 435). Plaintiff reported that she used a wheelchair at home (Tr. 435). Plaintiff reported that she liked to shoot pool, play gin rummy, and garden, but that she was no longer able to garden (Tr. 435). Kenna noted slowed motor activity but good motivation and normal speech (Tr. 436). Kenna concluded that Plaintiff "does not appear able to do work related activities as she has trouble caring for herself" (Tr. 436).

Later the same month, Quan Nguyen, M.D. completed an assessment of Plaintiff's work-related physical abilities on behalf of the SSA, finding that Plaintiff was limited to lifting/carrying 10 pounds occasionally and less than 10 pounds frequently; standing/walking for two hours in an eight-hour workday and sitting for six; and unlimited pushing and pulling

-8-

(Tr. 106-107).  Leonard C. Balunas, Ph.D. also performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that Plaintiff experienced mild limitation in maintaining concentration, persistence, or pace (Tr. 104).

### C. Vocational Expert Testimony

ALJ Mason determined that none of Plaintiff's work activity in the past 15 years rose to the level of Substantial Gainful Employment (Tr. 87).  The ALJ then posed the following set of restrictions to VE Pauline Pegram, taking into account Plaintiff's age, education, and former work activity:

> [L]imited to sedentary work.[3] Individual can sit for six of eight hours for a half an hour at a time, can stand or walk for two of eight hours for 10 minutes at a time, can alternate between sitting and standing twice an hour.  Pushing and pulling would be at the same weights, occasional.  Ramps and stairs with a handrail.  No ladders, ropes, and scaffolds.  Can occasionally balance, stoop, kneel.  No crouching, no crawling.  Individual could occasionally turn . . . the head.  These would be jobs that would allow the turning of the body to view or perfom work.  No overhead reaching.  Frequent reaching in all other directions.  A moderate . . . noise and light level.  This would be from a light industrial to an office setting.  No hazards, that is unprotected heights, or the operational control of dangerous moving machinery.  Frequent handling, fingering, and feeling bilaterally.  No foot control.  No concentrated exposure to cold, heat . . . cold, humidity, and wetness.  This individual would be able to elevate – to alternate[] one foot at a time.  The elevation of feet while sitting to 12 inches.  And finally, this individual could use a cane to stand and walk

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

. . . or a walking stick [] however, could . . . stand for two to three minutes without the use of such a device, and could walk up to 40 feet without use of the device, but could carry light items weighing two to three pounds in the free hand (Tr. 87-88).

Based on the above restrictions, the VE testified that the hypothetical individual could perform the unskilled, sedentary work of an inspector (33,000 positions in the national economy) and sorter (25,000) (Tr. 89).

The VE testified further that the additional restriction to "simple routine repetitive tasks . . . not requiring specific production rate" and a work environment "free of fast-paced production requirements involving only simple work-related decisions with few, if any, workplace changes;" and, only "occasional contact with co-workers, supervisors, and the general public" with "no team or tandem task[s]" would not change the above job findings (Tr. 89-90). The VE testified that the need to be off task at least 15 percent of the workday, the need to recline for at least one hour each workday, or to miss two days of work each month, would preclude all competitive employment (Tr. 90). She stated that her testimony regarding changes of position, "directionality of reaching," and the ability to turn the head was based on her professional work experience (Tr. 90-91).

In response to questioning by Plaintiff's counsel, the VE stated that if the hypothetical restrictions were amended to limit the individual to *occasional* bilateral handling and fingering, the jobs of inspector and sorter would be eliminated (Tr. 91-92). She stated that the need to elevate the leg(s) to hip level or above would preclude all work (Tr. 92). Finally, she stated that the inability to look up or down due to neck problems would eliminate all

work (Tr. 93).

###### D.     The ALJ's Decision

Citing Plaintiff's treating records, ALJ Mason found that Plaintiff experienced the severe impairments of "degenerative disc disease of the cervical spine with mild right radiculopathy, degenerative disc disease of the lumbar spine with mild right radiculopathy, carpal tunnel syndrome, morbid obesity, fibromyalgia, osteoarthritis, systemic lupus erythematousus (SLE), cholelithiasis, depression, anxiety, panic disorder, post traumatic stress disorder (PTSD), obsessive compulsive disorder, and bulimia nervosa" but that none of the impairments met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14-15).   He found that headaches were medically determinable impairments but did not cause more than minimal work-related limitation (Tr. 15).  The ALJ found that Plaintiff experienced only mild limitation in understanding, remembering, or applying information and in interacting with others but moderate limitation in concentration, persistence, or maintaining pace (Tr. 15-16).  He found mild limitation in adapting or managing oneself (Tr. 16).  He found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally sedentary work with the following additional limitations:

> [T]he claimant can sit for six hours of an eight-hour workday, but for only thirty minutes at one time. She can stand and/or walk for two hours of an eight-hour workday, but for no more than ten minutes at one time. The claimant must be able to alternate between sitting and standing two times per hour. The claimant can push and pull within the weight limitations of sedentary work. She cannot climb ladders, ropes, or

scaffolds. The claimant can occasionally balance, stoop, kneel, and climb ramps and stairs with handrails. She cannot crouch or crawl. The claimant can occasionally turn her head, and is limited to jobs that will allow turning of the body to view/perform work. The claimant cannot reach overhead. She can reach frequently in all other directions. She must avoid hazards such as unprotected heights and the operational controls of dangerous moving machinery. The claimant can frequently handle, finger, and feel bilaterally. She cannot operate foot controls. The claimant must avoid concentrated exposure to cold, humidity, and wetness. She must be able to alternate elevating each foot twelve inches while sitting. The claimant uses a cane/walking stick to stand and walk, but is able to stand for two to three minutes without the device, and can walk forty feet without the device, while carrying light items weighing two to three pounds in her free hand. The claimant is limited to simple, routine, repetitive tasks (less than constant). She cannot be subject to a specific production rate, and requires a work environment free of fast pace production requirements. The claimant can make only simple work related decisions, and should be subject to few if any workplace changes (Tr. 16-17).

Citing the VE's testimony, the ALJ found that the RFC allowed for work as an inspector or sorter (Tr. 24, 89).

The ALJ discounted Plaintiff's allegations of limitation, noting that a 2005 MRI of the right wrist showed less than major arthropathic changes (Tr. 19). He noted that a May, 2013 mental status examination was normal (Tr. 19). He cited an MRI of the cervical spine showing only mild abnormalities (Tr. 20). He acknowledged that an MRI of the lumbar spine showed mild to moderate stenosis at L4-L5 and moderate neural foraminal narrowing at L5-S1 (Tr. 20). He noted that an MRI of the brain was "completely normal" (Tr. 20). He cited the results of a June, 2016 consultative examination showing mild decreased sensation of the right upper and lower extremities (Tr. 20), but noted that

-12-

Plaintiff was able to perform gross and fine manipulation (Tr. 20).  The ALJ discounted Kenna's consultative finding that Plaintiff was unable to do work related activities due to trouble caring for herself (Tr. 21).  He noted that Plaintiff's treatment for the physical conditions was limited to pain medications prescribed by internists and "a few Toradol injections" (Tr. 23).

### III. STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at 1152; 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).  Where substantial

evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).    However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a).  The Plaintiff

has the burden of proof at steps one through four, but the burden shifts to the

Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment,

he retains the residual functional capacity to perform specific jobs existing in the national

economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th

Cir.1984).

## V. ANALYSIS

Arguing in favor of remand to the administrative level, Plaintiff faults the ALJ for

failing to provide any support for his Step Three conclusion that none of the "severe"

conditions met or medically equaled a listed impairment. *Plaintiff's Brief,* 10-15, *Docket

#10,* Pg ID 657.  Specifically, she contends that the evidence of record supports the finding

that she meets Listing 1.04(A)(Disorders of the spine).  *Id.*; 20 C.F.R. Part 404, Subpart

P, Appendix 1, § 1.04(A).

In response, Defendant acknowledges that in making the Step Three finding, the

ALJ did not enumerate Listing 1.04 or state why Plaintiff did not meet or equal a listing,

but that "such an omission is not cause for remand . . ." *Defendant's Brief,* 5-13, *Docket

#15,* Pg ID 677.   Defendant notes that even assuming that the ALJ erred by failing to

mention Listing 1.04(A), Plaintiff cannot meet all of the requirements for disability under

the Listing; thus, Defendant contends that the ALJ's omission was at most harmless error.

*Id.* at 8.   As to the ALJ's additional Step Three finding that none of the conditions

medically equaled a listed impairment, Defendant cites SSR 17-2p, which directs that the

failure to articulate reasons for the equivalency finding at Step Three is not required provided that at "a later step in the sequential evaluation process," the ALJ provides a rationale "sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence" at Step Three.  *Id.* at 7; 2017 WL 3928306 at *4 (March 27, 2017).

At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [ ] and entitled to benefits." *Reynolds v. Commissioner of Social Security*, 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (*citing* § 404.1525(a)).

To meet Listing 1.04, the claimant must make a threshold showing of a spinal disorder such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture[ ], resulting in compromise of a nerve root (including the cauda equina) or the spinal cord."  20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04.  Plaintiff argues, in effect, that she satisfies the introductory requirements of osteoarthritis and degenerative disc disease  along with the "A" criteria, which require:

Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

§ 1.04(A).

While the record contains some evidence of range of motion limitations and muscle weakness, the absence of neurological testing showing "positive straight leg raising" as required by the Listing defeats her claim to disability at Step Three. § 1.04(A). *See Houston v. Colvin*, 2017 WL 82976, at *2 (E.D. Mich. January 10, 2017)(Drain, J.)(failure to present evidence of one of the elements of the Listing 1.04(A) forecloses a finding of disability at Step Three). My own review of the medical transcript does not show even one reference to a positive straight leg raising test. Plaintiff's contention that she meets Listing 1.04(A) is thus not unsupported by the record. By itself, the ALJ's failure to discuss the Listing does not provide grounds for remand.

However, as to the other conditions that the ALJ found to be "severe" at Step Two, Defendant's contention that the ALJ satisfied the requirements of SSR 17-2p by discussing the treating and consultative records at the later steps of the analysis is not well taken. First, the ALJ's failure to cite *any* listing regarding the physical conditions at Step Three is problematic. In addition to the musculoskelatal problems, the ALJ found that Plaintiff experienced the severe impairments of fibromyalgia and systemic lupus erythematousus ("lupus") (Tr. 14). Notwithstanding, the determination makes no mention of the criteria

-17-

for evaluating either fibromyalgia or lupus.  Because fibromyalgia is not among the listed

impairments, SSR 12-2p directs that after making a finding that fibromyalgia is a severe

impairment, the ALJ determines at Step Three "whether [fibromyalgia] medically equals

a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether

it medically equals a listing in combination with at least one other medically determinable

impairment." At no point in the administrative opinion does the ALJ reference SSR 12-2p

or any of possible listings considered in making an equivalency determination for the

condition of fibromyalgia.

The failure to make reference to Listing 14.02 (Systemic lupus erythematosus)  is

of equal or greater concern.   Part A of the Listing can be met with "a moderate level of

severity" involving one organ or body system accompanied by "fatigue, fever, malaise, or

involuntary weight loss." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.02.  Plaintiff's

lupus diagnosis is particularly significant given evidence of gastrointestinal conditions and

the May, 2017 removal of her gallbladder.[4]  *See Reynolds, supra,* 424 Fed.Appx. at 416

(*citing* 20 C.F.R. § 404.1520(a)(4)(iii)("ALJ's error was not harmless, for the regulations

indicate that if a person is found to meet a Listed Impairment, they are disabled within the

meaning of the regulations and are entitled to benefits; no more analysis is necessary").

---

[4]

Lupus.org states that in addition to extreme fatigue, individuals with lupus "may experience problems in any area of the GI system, including the surrounding organs such as the liver, pancreas, bile ducts, and gallbladder."https://www.lupus.org/resources/how-lupus-affects-the-gastrointestinal-system (last visited June 20, 2019).

While the ALJ noted that the medical evidence did not include a finding that Plaintiff met or medically equaled a listed impairment (Tr. 15), the diagnosis of gastrointestinal conditions and gall bladder removal post-dated the consultative and non-examining records by almost one year (Tr. 529, 534, 604).  Moreover, the May, 2017 biopsy and surgical records would not be expected to contain a statement pertaining to Plaintiff's eligibility for SSI benefits.

At a minimum, the ALJ's failure to cite any of the applicable listings for the physical conditions, coupled with the lack of discussion regarding the criteria for meeting or medically equaling a listing requires a remand for clarification.  An ALJ "must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds*, *supra*, 424 Fed.Appx.  at 415.  "In short, the ALJ needed to actually evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* at 416.[5]  Likewise here, the failure to reference the criteria for disability at Step Three for fibromyalgia or lupus by Social Security Ruling, Listing, or description at Step Three or at subsequent steps of the

---

[5]

If anything, the present case presents a stronger case for remand than in *Reynolds.* At least in *Reynolds*,  the ALJ cited Listing 1.00 (an "umbrella" listing for all  musculoskeletal disorders) whereas here, the ALJ failed to include even one listing that he considered in making his Step Three regarding the physical conditions.

analysis warrants a remand.[6]

Notwithstanding the deficiencies of the administrative opinion, an award of benefits is premature. A remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.,* 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, I recommend a remand for further administrative proceedings consistent with this Report.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Docket #10] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings. I recommend that Defendant's Motion for Summary Judgment [Docket #15] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998).

---

[6]

The present case is distinguishable from *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411 (January 31, 2006)(no error in declining to elaborate on Step Three finding where "ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings"). In contrast here, the administrative opinion contains no indication that the ALJ considered the Step Three criteria for disability for any of the severe physical conditions.

-20-

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


    s/ R. Steven Whalen
    R. STEVEN WHALEN
    UNITED STATES MAGISTRATE JUDGE

Dated: June 24, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to parties of record on June 24, 2019, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen